IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

PINNACLE MINING COMPANY, LLC,

           Plaintiff,

v.                                    CIVIL ACTION NO.  5:08-cv-00931

BLUESTONE COAL CORPORATION, et al.,

           Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Pinnacle Mining Company, LLC's Motion for Preliminary Injunction [Docket 8], Defendants Bluestone Coal Corporation (Bluestone), Bluestone Industries, Inc., and Double-Bonus Coal Company's Motion to Dismiss [Docket 16], and Defendants' Request to Present Oral Argument [Docket 21].  The motions have been fully briefed and are ripe for the Court's review.

*I.  BACKGROUND AND PROCEDURAL HISTORY*

This action arises out of Defendants' allegedly illegal underground coal mining into the buffer zone beneath Plaintiff's Smith Branch Impoundment (impoundment).  Plaintiff filed a five-count amended complaint alleging that in August of 2007, Defendants conducted "underground mining that penetrated the safety zone of the [impoundment] in violation of state and federal laws and its permit." (Docket 7 ¶ 10.)   Plaintiff avers that Defendants' mining has affected the integrity of the impoundment.  Specifically, Plaintiff claims that "[a]s a result of the removal of support caused by Defendants' mining, cracks have formed on the impoundment's walls indicating that the

stability of the structure has been affected." (Docket 9 at 2.)  Consequently, the West Virginia Department of Environmental Protection (WVDEP) and the United States Department of Labor Mine Safety and Health Administration (MSHA) have become involved.  Upon WVDEP's order, both Plaintiff and Defendants submitted reports regarding what remedial measures are necessary preserve the safety and integrity of the impoundment.  In addition, Plaintiff filed a report with MSHA.  To compile the reports, Plaintiff incurred expenses by procuring engineering experts.  Also, because neither WVDEP nor MSHA has determined what remedial measures are necessary, Plaintiff anticipates that it may have to take additional steps in the future to preserve the integrity of its impoundment.

Count One of Plaintiff's amended complaint alleges that Defendants were negligent and/or reckless in conducting mining operations, which compromised Plaintiff's impoundment and required Plaintiff to take steps to ensure the integrity of the compound.  Count Two asserts that Defendants are strictly liable for all damages resulting from their violations.  Count Three contends that Plaintiff is entitled to damages as a result of Defendants' violation of the federal Surface Mining Control and Reclamation Act.  Count Four seeks an injunction requiring Defendants to continue pumping the water from its mine and to provide financial assurance that the water will be pumped in perpetuity. Finally, Count Five asserts that Defendants Bluestone Coal Corporation, Double-Bonus Coal Company, and Bluestone Industries are alter egos, and their corporate structures should be disregarded, making each liable for the others' acts in this action.

In addition to its amended complaint, Plaintiff filed a Motion for a Preliminary Injunction [Docket 8] to require Defendants to continue pumping water from the coal mine.  Defendants filed

a Motion to Dismiss each count of the amended complaint [Docket 16] and a Request to Present Oral argument in support of their motion [Docket 21].[1]

## II.  MOTION TO DISMISS

Defendants' motion to dismiss, in which they argue that Plaintiff's amended complaint fails to state a claim upon which relief can be granted, must be evaluated under the pleading standard set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Rule 8(a)(2) requires only that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The statement must merely "give the defendant fair notice of what the . . . claim is and the grounds upon which its rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

*Twombly* states that a well-pleaded complaint must aver "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  A "plausible" claim cannot be supported by mere "labels and conclusions." *Id.* at 555.  Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and critical elements of a claim must be, at a minimum, "suggested by the facts," *id.* at 569.  In testing the sufficiency of the complaint, the Court must "accept[ ] all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable inferences from those facts in the plaintiff's favor." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005).

---

[1]  As a general rule, this Court hears oral argument on motions only when it appears necessary or helpful to the court, which it does not in this case.  *See* L. R. Civ. P. 78.1.  Therefore, the Request of Defendants to Present Oral Argument [Docket 21] is **DENIED**.

A.      *Count One*

Count One alleges that Defendants were "negligent, grossly negligent, and/or reckless in conducting mining operations which penetrated the safety zone of the [] impoundment" and requests "an award of damages resulting from [Defendants'] conduct, including but not limited to, damages for engineering and monitoring costs, remedial measures, punitive and consequential damages." (Docket 7 ¶¶ 20-23.)

In their motion to dismiss, Defendants argue that Count One should be dismissed or stayed under the doctrine of primary jurisdiction until the WVDEP and MSHA reach their regulatory determinations. The doctrine of primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). "[I]n such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. W. Pac. R. R.*, 352 U.S. 59, 64 (1969). The doctrine of primary jurisdiction is designed to promote two goals: uniformity and the application of specialized knowledge of agencies. *Id.* In deciding whether to apply the discretionary doctrine, a court must determine "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* To aide its decision, this Court considers the following four factors:

> First, whether the issue is within the conventional experience of the judiciary. Second, whether the disposition of the issue is dependant on a subject matter that requires the agency's specialized expertise. Third, whether there is a danger of inconsistent rulings between the agency and the Court. Lastly, the Court looks to whether a prior application to the agency has been made.

*Energy Dev. Corp. v. Cabot Oil and Gas Corp.*, No. 2:04-0862, 2006 WL 3457206, *3 (S. D. W.Va. Nov. 30, 2006) (Chambers, J.).

4

The factors provided in *Energy Dev. Corp*. counsel against the application of the doctrine of primary jurisdiction in this case.   First,  Count One presents a negligence claim, which is well within the conventional experience of the Court.  Plaintiff's negligence claim is independent from the issue before WVDEP or MSHA.[2]  The record indicates that the sole issue before the WVDEP is what remedial measures are necessary to ensure the safety and integrity of the impoundment and Defendants' deep mine.  WVDEP directed Plaintiff to conduct an investigation of the integrity of the impoundment and to make recommendations regarding what further remedial measures are necessary to ensure the integrity of the impoundment.[3]  Also, WVDEP required Bluestone to submit "a revision that will work in conjunction with the Pinnacle Mining Revision to insure that safety and integrity of the Smith Branch Impoundment and the [deep mine] that is currently under review." (Docket 20-2 at 5.)  WVDEP is in the process of reviewing the documents submitted by both parties and will determine what remedial measures are necessary.  Doubtless, the task before the WVDEP requires  specialized  expertise  regarding  various  mining  and  geological  issues.   However,  this Court's task is not so complicated.  Whereas the WVDEP must rely on its expertise to determine what future remedial actions must be taken to preserve the integrity of the impoundment, this Court

---

[2]  Plaintiff attached a citation prepared by MSHA that states the undermining of the impoundment compromised the stability of the impoundment and resulted in it "not meeting the requirements of the plan approved by the District Manager." (Docket 8-4 at 2.)  In addition, both parties allege that MSHA is in the process of determining what remedial measures are necessary.  However, nothing in the record indicates that MSHA will resolve the issues contained in Count One.

[3]  WVDEP issued an "MR-15 Notice of Violation" on August 14, 2007.  In that document, WVDEP required Plaintiff to submit a revised "Assessment of Hazards and Consequences of Failure" as a result of Defendants' mining in the vicinity of the impoundment.  (Docket 8-3 at 2.)  Plaintiff responded to the "MR-15 Notice of Violation" on April 2, 2008, proposing that a compacted coarse coal refuse fill, a type of barrier, be constructed at the southern end of the crest in the impoundment area. (Docket 8-5 at 8.)  Plaintiff also suggested that Defendant's mine be pumped in perpetuity and that two piezometers be installed and monitored.  (*Id.* at 10.)

need only look back at Defendants' actions to determine if they meet the common law elements of negligence.

Next, Defendants argue that "a determination of damages in this case will necessarily involve the very issues of what is required to stabilize the subject impoundment." (*Id.*) However, this Court's determination of damages is not dependant on WVDEP's assessment. First, it is clear that WVDEP's specialized expertise will not aide the Court in calculating punitive or consequential damages, damages for engineering and monitoring costs, or the costs of previous remedial measures.[4] Second, even though WVDEP may require Plaintiff to take future remedial actions, the Court can determine whether Defendants should indemnify Plaintiff for costs resulting from WVDEP's decision without knowing what those costs may be.

In addition, the third element presented in *Energy Dev. Corp.* counsels against a stay or dismissal. An award of damages based on Plaintiff's negligence claim would not result in inconsistent obligations for Defendants because Plaintiff does not request that the Court require Defendants to engage in remedial actions[5]—Plaintiff merely requests damages. Therefore, there is no danger of any inconsistent rulings between the Court and WVDEP. Finally, the fourth element also counsels against a stay or dismissal because a prior application has not been made to WVDEP regarding this common-law negligence claim.

In short, an analysis of the *Energy Dev. Corp.* factors indicates that staying or dismissing Count One would not promote the application of specialized knowledge of agencies—one of the two

---

[4] The record shows that to date, Plaintiff's remedial expenses have been limited to costs associated with preparing its proposal as directed by WVDEP.

[5] Count One requests indemnification for any remedial damages incurred by Plaintiff, which is an entirely different issue.

purposes embodied by the doctrine of primary jurisdiction.  In addition, the parties make no allegation that staying this matter will implicate the second policy consideration of uniformity. Accordingly, Defendants' motion to Dismiss Count One under the doctrine of primary jurisdiction is **DENIED**.

   *B. Count Two*

  Count Two asserts that Defendants are strictly liable for damages caused by their unlawful mining into the safety zone of the impoundment.  Defendants argue that Count Two of Plaintiff's amended complaint does not allege sufficient information to maintain a cause of action.  Conversely, Plaintiff alleges that its amended complaint "plainly asserted that Defendants' conduct in violating its mining permits and undermining Pinnacle's impoundment was both unduly dangerous and inappropriate to the place where it was maintained, in light of the character of that place and its surroundings." (Docket 19 at 8.)  Contrary to Plaintiff's assertion, Count Two does not "assert" that the undermining of the impoundment was unduly dangerous or inappropriate to the place where it was maintained.[6]

---

[6]  In its entirety, Count Two states the following:

  24.  Bluestone violated its permit and state and federal laws and regulations when it mined into the safety zone of Pinnacle's impoundment.

  25.  Bluestone is strictly liable for all damages to Pinnacle resulting from Bluestone's violation of its permit and state and federal laws and regulations.

  26.  Pinnacle is entitled to an award of damages resulting from Bluestone's conduct, including, but not limited to, damages for engineering and monitoring costs, remedial measures and consequential damages.

(Docket 7 ¶¶ 24-26.)

However, such allegations are not necessarily required to survive the 12(b)(6) motion.  In determining whether the allegations contained in Count Two are sufficient to satisfy the low threshold required for a complaint by Rule 8(a)(2) and *Twombly*, the Court must determine whether Defendants' conduct, as alleged by Plaintiffs in Count Two and reasonable inferences drawn therefrom, if true, would subject Defendants to strict liability.

In determining whether an activity is abnormally dangerous so as to make a defendant strictly liable for damages caused by the activity, the following factors are to be considered:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

*In re: Flood Litigation*, 607 S.E.2d 863, 874 (2004) (citing Restatement (Second) of Torts §§ 519-20 (1977).  Plaintiff alleges that "Bluestone violated its permit and state and federal laws and regulations when it mined into the safety zone of Pinnacle's impoundment." (Docket 7 ¶ 24.)  This allegation does not directly address the elements that the Court must consider in its inquiry regarding strict liability.

Nevertheless, the critical elements are suggested by the facts.  Plaintiff's allegation suggests that by mining under an impoundment in violation of state and federal laws, Defendants engaged in an activity that would very likely cause great harm and that such harm would not likely be

eliminated by an exercise of due care.  Furthermore, the fact that the undermining may be unlawful would suggest that undermining of an impoundment is not common, is not appropriate for the area, and is more harmful than valuable to the community.  In addition, Defendants have been put on notice of Plaintiff's claim and the grounds upon which it rests.  Thus, under the pleading standards set forth in Rule 8(a)(2) and *Twombly*, Count Two provides sufficient information to state a claim upon which relief can be granted.

However, the Court's inquiry does not end there.  Defendants assert that even if sufficiently pled, the allegations in Count Two do not give rise to strict liability under *In re: Flood Litigation*. In that case, the Supreme Court of Appeals of West Virginia responded to a certified question presented by the Flood Litigation Panel by stating that the operation of extracting and removing natural resources is not an abnormally dangerous activity and that the defendants in that case were not strictly liable to the plaintiffs for any damages caused by their activities.  *In re: Flood Litigation*, 607 S.E.2d at 874.  The court reasoned, "[E]xtractive activities such as coal mining and timbering are common activities in southern West Virginia . . . .  [W]e are unable to conclude that the great economic value of some of these extractive activities, such as coal mining, is outweighed by their dangerous attributes."  *Id.*

Though this Court agrees that mining and resource extraction, done lawfully, are not inherently dangerous and are not subject to strict liability, the alleged unlawful undermining of the impoundment make this case factually different from *In re: Flood Litigation*.  Unlike the *In re: Flood Litigation* defendants, who where merely engaging in the activity of extracting resources, the Defendants here are accused of mining under an impoundment in violation of state law and regulations.  Therefore, the holding in *In re: Flood Litigation* is not dispositive to this motion.

9

Further discovery is necessary to determine whether Defendants' actions are subject to strict liability. However, in absence of any authority that states mining under an impoundment is not an abnormally dangerous activity, Plaintiff's claim survives under *Twombly* and Rule 8(a)(2). Accordingly, Defendants' motion to dismiss Count Two is **DENIED**.[7]

    C.    *Count Three*

Count Three alleges that Plaintiff is entitled to damages under section 1270 of the Surface Mining Control and Reclamation Act (SMCRA). 30 U.S.C. § 1270. Defendants argue that Plaintiff is not a proper party to bring a complaint under SMCRA. Under SMCRA, "[a]ny person who is injured in his person or property through the violation by any operator of any rule, regulation, order, or permit issued pursuant to this chapter may bring an action for damages." 30 U.S.C. § 1270(f). Defendants assert that Plaintiff is not "any person" within the meaning of SMCRA.

In support of its contention, Defendants cite to *United States v. Gorman Fuel, Inc.*, 716 F. Supp. 991 (E. D. Ky. 1989). In *Gorman Fuel*, a district court in Kentucky determined that under SMCRA, "any person" means "private citizen," and the court "interpret[ed] the phrase 'private citizens' in the most straightforward and logical way to mean those outside the regulatory and enforcement scheme of SMCRA." *Id.* at 994. Accordingly, the court held that a coal company is not "any person" within the meaning of SMCRA. *Id.* at 995.

---

[7] Plaintiff also contends that had the court found Count Two to be insufficient, a more definite statement would be the appropriate remedy as opposed to dismissal. Because the Court has denied Defendant's motion to dismiss Count Two, this argument is moot. However, the Court notes that a motion under Rule 12(e) of the Federal Rules of Civil Procedure was not filed in this case. Furthermore, discovery will eliminate any potential vagueness problems with Count Two. *See Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 824 (4th Cir. 1973) (holding that while requiring explanation under Rule 12(e) is generally left to the district court's discretion, when a complaint conforms to Rule 8(a), discovery provides adequate means for ascertaining the facts in maturing a case for trial).

Plaintiff contends that *Gorman Fuel* does not apply in this instance, and a regulated entity can be "a person" within the meaning of the act when it is not acting in its capacity as a regulated entity. In *Gorman Fuel*, plaintiff coal companies sued the United States, challenging agency determinations that they were liable for fees regarding certain abandoned mines.[8] *Id.* at 992. To do so, the plaintiff coal companies relied on 30 U.S.C. § 1270(a)(1), a portion of SMCRA's citizen suit provision that permits an action against the United States. *Id.* at 993. Therefore, in determining whether a coal company could be "any citizen" under SMCRA, the *Gorman Fuel* court was considering the issue in the context of a coal company, clearly acting as a member of the regulated industry, suing the government. The court reasoned that "[t]o allow an agency determination via a citizen suit could, in some cases, lead to the anomalous result of the citizen suit provisions being used to weaken agency enforcement, rather than strengthen it." *Id.* at 994.

However, in this instance, Plaintiff arguably could be considered a landowner rather than a member of the regulated industry. Instead of bringing a suit to challenge an agency determination under § 1270(a)(1), Plaintiff is bringing an action against another coal company pursuant to § 1270(f), a provision of SMCRA that allows an action for damages. Plaintiff is not seeking an agency determination via a citizen suit; it is seeking damages from Defendants. Thus, the policy concerns that were considered in *Gorman Fuel* are not applicable in this case. As such, whether a member of the coal industry can be "any person" within the purview of SMCRA *when it is acting as a private landowner* appears to be one of first impression. A member of the coal industry

---

[8]  *Gorman Fuel* was a consolidated case involving both a suit filed by the government to collect abandoned mine lands fees from Gorman Fuel and other coal companies and a suit by the coal companies against the government. Though the coal companies were also defendants in that case, for the purposes of this discussion, they will be referred to as "plaintiff coal companies."

11

bringing an action as a private landowner is not prohibited on the face of SMCRA.  In addition, the Court is unaware of any legislative history indicating that Congress intended to directly prohibit a coal mine from bringing an action under SMCRA.  Therefore, the Court finds no reason to so hold.

Defendants argue that because Plaintiff holds a permit for the impoundment, it is not acting as a mere landowner.  However, the Court **FINDS** that additional information provided by discovery will be necessary to determine whether Plaintiff is acting as a landowner or as a member of a regulated industry.  In addition, Plaintiff has asserted sufficient facts under Count Three to raise a right to relief beyond a speculative level and to survive Defendants' 12(b)(6) motion.  Accordingly, Defendants' Motion to Dismiss Count Three is **DENIED**.

     *D.*    *Count Four*

Defendants move to dismiss Count Four, which is a claim for permanent injunctive relief.[9] Defendants argue that Count Four should be dismissed because it is not yet ripe.[10]  However, the ripeness doctrine is not applicable in this instance because Plaintiff's request for a permanent injunction is merely a claim for relief that flows from Plaintiff's substantive claims.  "A request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely

---

[9]  In its amended complaint, Plaintiff requests "an injunction requiring Bluestone to continue pumping the water from its mine, to take and maintain whatever additional remedial measures may be required by regulators and to maintain financial assurance that these steps will be continued into perpetuity."  (Docket 7 ¶ 35.)  However, in its response in opposition to Defendants' motion to dismiss, Plaintiff categorizes the injunction it requests in Count Four as a "preliminary injunction." (Docket 19 at 11.)  The Court assumes that Plaintiff's counsel has made an error in such categorization because any request for relief in perpetuity is a request for a permanent injunction. Therefore, the Court will treat Count Four as a request for permanent injunction.

[10]  Similar to the doctrine of primary jurisdiction, the doctrine of ripeness "concern[s] whether a court should preempt an agency from making initial decisions on certain issues."  *Potomac River Ass'n., Inc. v. Lundeberg Md. Seamanship Sch.*, *Inc*., 402 F.Supp. 344, 352 (D. Md. 1975).

the remedy sought for the legal wrongs alleged in the . . . substantive counts." *See Fare Deals Ltd.*
*v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001) (citing *Howell*
*Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614, 622 (10th Cir. 1992); *see also Direx Israel, Ltd.*
*v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (stating that a permanent injunction
is "an extraordinary *remedy*") (emphasis added).  Plaintiff could have easily included a permanent
injunction in its list of remedies sought under Counts One through Three rather than listing it as a
separate claim in its amended complaint.

There is nothing about the pendency of this action that prevents WVDEP or MSHA from
conducting parallel proceedings that relate to Plaintiff's request for an injunction.  Moreover, it is
possible that either agency could issue an order requiring Defendants to perform actions that would
render Plaintiff's request for injunctive relief moot.  However, at this time, there still could be a
basis for Plaintiff to seek injunctive relief.  Accordingly, Defendants' motion to dismiss Count Four
is **DENIED**.

E. *Count Five*

In Count Five, Plaintiff alleges that Defendants Bluestone Coal Corporation, Double Bonus
Coal Company, and Bluestone Industries are alter egos and each should be liable for the acts of the
others.  However, in response to Defendants' motion to dismiss, Plaintiff has agreed to voluntarily
dismiss Count Five of its amended complaint without prejudice.  (Docket 19 at 12 n.7.)  Under Rule
41(a)(1) of the Federal Rules of Civil Procedure, a Plaintiff may voluntarily "dismiss an action
without a court order by filing . . . a notice of dismissal before the opposing party serves either an
answer or a motion for summary judgment."  In this instance, Defendants have not yet served an

13

answer or a motion for summary judgment.  Accordingly, Count Five is **DISMISSED** without prejudice.

### III.  MOTION FOR PRELIMINARY INJUNCTION

Plaintiff filed a motion for preliminary injunction, requesting the Defendants be required to continue pumping water from the deep mine in question.  Plaintiff contends that a preliminary injunction is necessary "to protect the status quo by ensuring that Defendants continue pumping water from the mine so as to avoid causing any additional damage which could threaten the integrity of the impoundment."  (Docket 9 at 1.)  In addition, in Count Four of its amended complaint, Plaintiff requests a permanent injunction requiring Defendants "to continue pumping water from its mine, to take and maintain whatever additional remedial measures may be required by regulators and to maintain financial assurance that these steps will be continued in perpetuity."  (Docket 7 ¶ 35.)  As of the time of these filings, Defendants have been pumping water from the mine, keeping the impoundment safe and stable.  Furthermore, Defendants argue that they are already under a legal duty imposed by WVDEP to "remedy the alleged impingement," and they "have not yet failed under that duty."  (Docket 17 at 7.)

### A.    Preliminary Injunction Standard

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524 (4th Cir. 2003) (citing *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001)) (internal quotation marks omitted).  Such limited circumstances arise when there is a "demonstration of a need to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful

judgment on the merits." *Id*. at 526.  When the need is demonstrated, the issuance of a preliminary injunction is entrusted to the discretion of the district court.  *Id.*

To determine whether the issuance of a preliminary injunction is appropriate, the court must apply a "hardship-balancing test" first articulated in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 194–96 (4th Cir. 1977).  Under this test, the court must consider the following four factors:  (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest.   *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

However, each factor is not given equal weight.  "The irreparable harm to the plaintiff and the harm to the defendant are the two most important factors."  *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991).  The plaintiff bears the burden of establishing each of these factors to show an injunction is warranted.  *Direx Israel*, 952 F.2d at 812.  Thus, before any further analysis is undertaken, the plaintiff must first make a "clear showing" of immediate and irreparable harm.  *Id.*

> B.    *Analysis*

Plaintiff asserts that "an injunction is the only legal means by which [it] can ensure that Defendants continue to pump the water . . ., and [w]ithout the injunction, [Plaintiff] risks losing its permit for the impoundment and, as a result, the mining operation it services."  (Docket 9 at 6.) However, Plaintiff has failed to make a clear showing that the only remedial measure available is the continued pumping of water.  Instead, Plaintiff provided an alternative to pumping, which is outlined in requirements issued to Pinnacle by WVDEP.  (Docket 9 at 3.)  Those requirements state

that if Pinnacle is unable to interact with Defendants to ensure the recommended perpetual pumping, "this permit must include steps for remedial actions that must take place such as grouting the mine workings or removal of any and all refuse material that may pose a threat due to the location and condition of [the deep mine]." (*Id.*) Thus, it seems as though another remedy is available.

Moreover, Defendants are continuing to pump the water, and Plaintiff has failed to show that they likely will cease to do so. As such, Plaintiff has not made a clear showing that absent an injunction, it will suffer immediate and irreparable harm. Because Plaintiffs have failed to demonstrate this crucial element, the balance of harms tips decidedly in favor of Defendants, and the Court need not address the remaining three factors of the *Blackwelder* test. As a traditional maxim of equity states, "[e]quity does not engage in idle gestures." *Shango v. Jurich*, 681 F.2d 1091, 1105 (7th Cir. 1982). It would be an idle gesture for this Court to require Defendants to pump water when they are already pumping. Accordingly, Plaintiff's motion for preliminary injunction is **DENIED** without prejudice.[11]

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Request to Present Oral Argument [Docket 21], **DENIES** without prejudice Plaintiff's Motion for Preliminary Injunction [Docket 8], and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss [Docket 16]. Defendants' motion to dismiss is **GRANTED** to the extent that Count Five of Plaintiff's amended complaint is **DISMISSED** without prejudice. Defendants' motion to dismiss

---

[11] If Plaintiff can show that Defendants' have ceased or are likely to cease pumping water from the deep mine, Plaintiff may renew this motion, and the Court will consider it.

16

is **DENIED** with respect to Counts One through Four of Plaintiff's amended complaint.  A separate Partial Judgment Order will enter this day implementing the rulings contained herein.

      **IT IS SO ORDERED.**

      The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     March 27, 2009

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

17